Robie G. Russell
ISB #2405
Russell Law Offices
76 South Main Street
Seattle, WA  98104
Telephone:     (206) 621-2012

William D. Marler, Esq.
WSB #17233
Marler Clark, L.L.P., P.S.
*(Pending Pro Hac Vice Admission)*
1301 Second Avenue, Suite 2800
Seattle, WA  98101
Telephone:     (206) 346-1888
Facsimile:     (206) 346-1898

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL BERNDT and MARISA BERNDT, )<br><br>Plaintiffs, )<br><br>v. )<br><br>TOWNSEND FARMS, INC., an Oregon corporation doing business in California; PURELY POMEGRANATE, INC., a California corporation; FALLON TRADING CO., INC. a Pennsylvania corporation; UNITED JUICE CORP, a New Jersey corporation; and DOES 4-100, inclusive, )<br><br>Defendants. ) | Case No. 1:13-cv-00388-CWD<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR NEGLIGENCE AND DAMAGES** |

Come now the Plaintiffs, MICHAEL BERNDT and MARISA BERNDT, on behalf of themselves and all those similarly situated, by and through the undersigned counsel of record, and allege and complain as follows, by way of this Second Amended Class Action Complaint:

SECOND AMENDED CLASS ACTION COMPLAINT

## I.   NATURE OF THE ACTION

1.1     This is a class action lawsuit brought on behalf of Plaintiffs and all persons injured as a result of actual or potential exposure to the hepatitis A Virus (hereinafter "HAV") in actually or potentially contaminated "Townsend Farms Organic Anti-Oxidant Blend" (hereinafter "the Product") imported, manufactured, distributed, and sold by the Defendants. The Product was sold by Costco stores in the affected states, including Washington, Colorado, New Mexico, Nevada, Arizona, Utah, Hawaii, and California, and likely others, and was recalled by Townsend Farms. According to Townsend Farms, such recall was "because [the Product] has the potential to be contaminated with Hepatitis A virus, based on an ongoing epidemiological and traceback investigation by the FDA and the CDC of an illness outbreak." *See* http://www.townsendfarms.com/ (checked June 9, 2013). The exposure occurred as the result of 1) consumption of the Product or 2) exposure to, or close proximity with, the Product or persons who were exposed to the Product.

1.2     The potential class action Plaintiffs in this lawsuit are those persons who (1) were required, for public health and personal safety reasons, to obtain a vaccination against HAV, or who received a prophylactic dose of immune globulin (IG), due to their exposure in the manners set forth in the preceding paragraph, and/or (2) underwent serology or other diagnostic testing procedures to determine whether such exposure had resulted in infection by HAV.

## II.   PARTIES

2.1     **MICHAEL BERNDT and MARISA BERNDT**: The Plaintiffs reside at 1812 North 10th Street, Boise, Ada County, Idaho 83702.

2.2     **TOWNSEND FARMS, INC.**: The Defendant Townsend Farms, Inc., (hereinafter "Townsend Farms") is an Oregon corporation that imports, manufactures, distributes, and sells a variety of fresh and frozen fruit products, including the Product at issue.

SECOND AMENDED CLASS ACTION COMPLAINT

At all times material hereto, Townsend Farms carried on in the ordinary course of business the import, manufacture, distribution, and sale of the Product ("Townsend Farms Organic Anti-Oxidant Blend"), a frozen berry and pomegranate seed mix that the Centers for Disease Control and Prevention has determined to be the cause of an outbreak of at least 162 HAV illnesses in ten states.   At all times material hereto, Townsend Farms knowingly distributed and sold the "Townsend Farms Organic Anti-Oxidant Blend" Product at Costco retail store locations throughout the western United States, including in the State of Arizona.

2.3   **PURELY POMEGRANATE INC**.: Defendant Purely Pomegranate, Inc., (hereinafter "Purely Pomegranate") is a California corporation that imports, manufactures, distributes, and sells premium pomegranate products, including pomegranate seeds, to consumers and other food manufacturing businesses across the country.  At all times material hereto, Purely Pomegranate carried on at its business location at 33971 Selva Road, Suite 240, Dana Point, California, the import, manufacture, distribution, and sale of pomegranate seeds to Townsend Farms for inclusion in the "Townsend Farms Organic Anti-Oxidant Blend" Product that has been determined to be the cause of an outbreak of at least 162 HAV illnesses in ten states. For purposes of this complaint, the term "Product" also includes the pomegranate seeds supplied by Purely Pomegranate that were included in the "Townsend Farms Organic Anti-Oxidant Blend" sold at Costco retail store locations throughout the western United States, including in the State of Arizona.

2.4   **FALLON TRADING CO., INC**.: Defendant Fallon Trading Co., Inc., (hereinafter "Fallon Trading") is a Pennsylvania corporation that imports, manufactures, distributes, and sells premium pomegranate products, including pomegranate seeds, to consumers and other food manufacturing businesses across the country.  At all times material hereto, Fallon Trading carried on at its business location at 35 Schultz Road, Green Lane, Pennsylvania, the import, manufacture, distribution, and sale of pomegranate seeds to Townsend Farms and others for inclusion in the "Townsend Farms Organic Anti-Oxidant Blend" Product that has been determined to be the cause of an outbreak of at least 162 HAV illnesses in ten

SECOND AMENDED CLASS ACTION COMPLAINT

states. For purposes of this complaint, the term "Product" also includes the pomegranate seeds supplied by Fallon Trading that were included in the "Townsend Farms Organic Anti-Oxidant Blend" sold at Costco retail store locations throughout the western United States, including in the State of Arizona.

2.5     **UNITED JUICE CORP.**: Defendant, United Juice Corp., (hereinafter "United Juice") is a New Jersey corporation that imports, manufactures, distributes, and sells premium pomegranate products, including pomegranate seeds, to consumers and other food manufacturing businesses across the country. At all times material hereto, United Juice carried on at its business location at 9019 River Road 2nd Floor, Rochelle Park, New Jersey, the import, manufacture, distribution, and sale of pomegranate seeds to Townsend Farms and others for inclusion in the "Townsend Farms Organic Anti-Oxidant Blend" Product that has been determined to be the cause of an outbreak of at least 162 HAV illnesses in ten states. For purposes of this complaint, the term "Product" also includes the pomegranate seeds supplied by United Juice that were included in the "Townsend Farms Organic Anti-Oxidant Blend" sold at Costco retail store locations throughout the western United States, including in the State of Arizona.

2.6     **JOHN DOES 1-100:** Plaintiffs are ignorant of the true names and capacities of defendants named herein as DOES 1 through 100, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend the complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe that each fictitiously named DOE Defendant is the agent of Defendants TOWNSEND FARMS and in doing the acts herein alleged, were acting within the scope and course of this agency relationship and have responsibility for the acts alleged herein.

### III.     JURISDICTION AND VENUE

3.1     Defendants have engaged in substantial, continuous, and systematic contacts within the State of Idaho, purposefully directing their activities towards Idaho, including the placement of their goods into the stream of commerce with the intent and expectation they will

SECOND AMENDED CLASS ACTION COMPLAINT

be purchased by consumers in Idaho, and this litigation arises out of those activities; and (b) venue would be proper in Idaho because the facts giving rise to one of the Plaintiffs' claims arose in Idaho, and Plaintiffs were injured in Idaho.

3.2     Defendant Purely Pomegranate, upon its removal of this action to the United States District Court for the District of Idaho, asserts the Idaho District Court has removal jurisdiction over this matter pursuant to 28 U.S.C. §§ 1441(b) and 1332(a), which allegation Plaintiffs do not concede, but otherwise have elected to not dispute.

## IV.     CLASS ACTION ALLEGATIONS

4.1     This action is brought as a class action upon removal pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all persons who (1) consumed the Product or (2) were exposed to, or were otherwise close proximity to, the Product or persons who were exposed to the Product, and (3) thereafter received vaccinations against HAV or a prophylactic dose of IG, and/or underwent serology or other diagnostic testing procedures to determine whether such exposure had resulted in infection by HAV.

4.2     The Plaintiffs do not yet know the precise size of the class because this information remains confidential and within the exclusive control of the applicable state and regional health departments and districts, and Costco stores.  However, the Plaintiffs understand and believe that the Product was distributed to Costco stores and thereafter sold to consumers over a wide geographic region between a date in the first several months of 2013 to the date that the outbreak linked to the Defendants' Product was announced, May 31, 2013, on or about which date Costco stores removed the Product from store shelves due to its actual/potential contamination. The Plaintiff therefore believes that the number of potential class members may be in excess of 10,000.

4.3     As the Product was distributed and sold in high volume, over several months, and over a wide geographic region, joinder is impracticable.  Nevertheless, notice of this class action to each potential respective class member can be accomplished once the respective individual class is certified, because the identity of potential class members is known by state, regional, and

SECOND AMENDED CLASS ACTION COMPLAINT

other public health organizations that can issue notification to potential class members, and because Costco stores are in possession of a list of all individuals who purchased the Product during the relevant time frame.

4.4     There are numerous questions of law and fact that are common to the respective class members, including but not limited to:

(a)     Whether the Product was actually or potentially contaminated with HAV;

(b)     Whether Defendant Townsend Farms breached express and implied warranties by its import, manufacture, distribution and sale of food that was actually or potentially contaminated with HAV;

(c)     Whether Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice were negligent in their import, manufacture, distribution and sale of food that was actually or potentially contaminated with HAV;

(d)     Whether Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice are strictly liable for their import, manufacture, distribution and sale of food that was actually or potentially contaminated with HAV;

(e)     Whether Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice are liable to all exposed persons who obtained vaccination or a prophylactic dose of IG to avoid infection or illness.

(f)     Whether Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice are liable to all exposed persons who underwent serology and/or other diagnostic testing procedures to determine whether their exposure to the Defendants' Product had resulted in infection by HAV.

4.5     Common questions of law and fact predominate over any questions affecting only individual class members.

SECOND AMENDED CLASS ACTION COMPLAINT

4.6     The Plaintiffs' claims are typical of the claims available to all potential class members, each of whom was exposed to either actually or potentially contaminated foods and/or actually or potentially infected persons.  The damages and relief sought by these Plaintiffs are also common to the exposed class and its members because the nature and process of vaccination or immunization treatment, and/or serology or other diagnostic testing, all related costs, and additional consequential losses are also similar throughout the exposed class.

4.7     The Plaintiffs will fairly and adequately represent and protect the interests of the class.  The Plaintiffs have no identifiable conflicts with any other potential class member.

4.8     The Plaintiffs have retained competent counsel, who are experienced in foodborne illness litigation and who have extensive experience with class action litigation.  The Plaintiffs' counsel – William D. Marler, Esq. and the Seattle, Washington law firm of Marler Clark – has represented more than 1,500 individuals in a class action related to an HAV outbreak at the D'Angelo's in Swansea, Massachusetts in 2001.   Marler Clark has also represented approximately 1,300 persons as part of a class action on behalf of persons who received IG shots due to an HAV outbreak in June and July, 2000 in Spokane, Washington, which was associated with food served at a Carl's Jr. fast food restaurant there.   In 2003, Marler Clark represented approximately 9,000 persons who received IG shots due to an outbreak of HAV at a Chi-Chi's restaurant near Pittsburgh, Pennsylvania.   Marler Clark also represented approximately 3,800 persons as part of a class action on behalf of persons who received IG shots due to an HAV exposure in June, 2004 at a Friendly's restaurant in Arlington, Massachusetts.  Marler Clark also represented approximately 850 persons as part of a class action on behalf of persons who received IG shots due to an HAV exposure at a Quizno's in Boston, Massachusetts in 2004.  Marler Clark also represented over 3,000 persons who received IG shots due to potential HAV

SECOND AMENDED CLASS ACTION COMPLAINT

exposure in January 2007 at a Houlihan's restaurant in Geneva, Illinois.  In 2009, Marler Clark represented more than 5,000 persons who were required to get vaccinations against HAV following exposure at a McDonald's restaurant in Milan, Illinois.  Marler Clark also represented over 3,000 persons who received HAV vaccines in 2011 due to exposure at a Fayetteville, North Carolina Olive Garden.  Marler Clark also has extensive experience representing victims who developed HAV acute illnesses.

4.9     The Plaintiffs are unaware of any possible difficulty in the management of this litigation that would prevent it from being maintained as a class action.  The class action mechanism is superior to other alternatives, if any exist, for the fair adjudication of the controversy.

4.10     The identity of potential class members can be ascertained from the various state and regional health agencies that have administered vaccinations or IG shots, or who have been informed of such vaccination or IG shots by either patient or provider report, and also from Costco stores, which stores are in possession of lists identifying all people who have purchased the Product.

4.11     In the absence of a class action, individual litigation of these claims will be unreasonably expensive in light of the probable damages that might be recovered, and will unreasonably burden the courts of this state and others, and will waste important judicial resources.

4.12     In the absence of a class action, individual litigation will also waste money that would otherwise be available to compensate these persons who were potentially exposed to infected persons or contaminated food, and accordingly needed vaccination or IG shots.

SECOND AMENDED CLASS ACTION COMPLAINT

4.13    In the absence of a class action, persons who might otherwise possess a remedy, and might otherwise be able to seek judicial relief, may be left without a reasonable means to obtain justice and full compensation for the injuries they sustained.

4.14    In the absence of a class action, and in the absence of prompt notification of all potential class members, any minor claims arising from this HAV exposure/outbreak, and the related vaccinations and IG shots, may languish, and may do so without the statute of limitations beginning to run until each minor turns 18.  As a result, litigation related to this potential outbreak could be in the courts, intermittently, and without coordination, for the next 20 years. In contrast, a class action lawsuit will allow for the efficient and expeditious adjudication of all such claims.

## V.    OTHER FACTUAL ALLEGATIONS

5.1    As of September 23, 2013, at least 162 people were infected by HAV and became ill due to consumption of the Defendants' Product.  The illnesses thus far have been reported to have occurred in residents of at least ten states:  Washington, Colorado, New Mexico, Nevada, New Jersey, Arizona, Utah, Hawaii, Wisconsin, and California.

5.2    Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice imported, manufactured, distributed, and sold the Product to Costco stores across the western United States, and possibly to other Costco stores across the country, for retail sale.

5.3    On or about the date of the public announcement about the HAV outbreak associated with the Defendants' Product, May 31, 2013, Costco stores removed the Defendants' Product from store shelves.  One or more of the Defendants later recalled all affected, potentially contaminated Product.

SECOND AMENDED CLASS ACTION COMPLAINT

5.4    HAV, which causes severe gastrointestinal illness and, in severe cases, liver failure and death, incubates in the human body for between 15 and 50 days.  Therefore, public health officials across the country continue to monitor for additional HAV infections and illnesses occurring as part of the HAV outbreak associated with the Defendants' Product.

5.5    The CDC and other state and regional public health agencies have advised any purchasers of the Defendants' Product to refrain from consuming the Product, and to obtain HAV vaccination, or a prophylactic dose of IG.  Public health officials have also recommended that people exposed to an individual known to have become ill in the Defendants' HAV outbreak, or who were exposed to the Product, to also obtain HAV vaccination, or a prophylactic dose of IG.

5.6    It is estimated that more than 10,000 people were potentially exposed to HAV as a result of the Defendants' import, manufacture, distribution, and sale of the actually/potentially contaminated Product.  These exposed individuals were exposed either by consumption of the Product, or exposure or close proximity to the Product or a person who consumed the Product.

5.7    Plaintiffs purchased and/or consumed the Product before the Product's association with the HAV outbreak was known, and before Costco stores removed the Product from store shelves.  Plaintiffs thereafter received vaccinations against HAV or a prophylactic dose of IG, and/or underwent serology or other diagnostic testing procedures to determine whether such exposure had resulted in infection by HAV.

## VI.    <u>**STRICT LIABILITY**</u>

6.1    By this reference, the Plaintiffs incorporate the preceding paragraphs of this complaint as if each and every one of these paragraphs was set forth here in its entirety.

SECOND AMENDED CLASS ACTION COMPLAINT

6.2     Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice imported, manufactured, distributed, and sold the Product that was the cause of at least 162 HAV illnesses in ten states, as described previously, and that caused the Plaintiffs and others similarly situated—i.e. the potential class members—to obtain vaccination or a prophylactic dose of IG due to their exposures, and/or to undergo serology or other diagnostic testing to determine whether exposure to the Product had resulted in HAV infection.

6.3     Because the Defendants' Product was actually/potentially contaminated by HAV, the food that the Defendants imported, manufactured, distributed and sold to Costco, and that the consumers purchased and consumed, as described previously, was in a condition that the consumers had not contemplated, and was in a condition that rendered the food Product unreasonably dangerous for its ordinary and expected use.

6.4     The food Product that the Defendants imported, manufactured, distributed and sold to Costco, and that the consumers purchased and consumed, as described previously, was expected to reach the consumers, and be consumed by them, without substantial change.  The consumers used the Product in the manner expected and intended, including when they consumed it.

6.5     The Plaintiff and the class suffered the aforementioned injuries as a direct and proximate result of the contaminated, defective food Product imported, manufactured, distributed and sold by the Defendants.

VII.     **NEGLIGENCE**

7.1     By this reference, the Plaintiffs incorporate the preceding paragraphs of this complaint as if each and every one of these paragraphs was set forth here in its entirety.

SECOND AMENDED CLASS ACTION COMPLAINT

7.2     The Defendants imported, manufactured, distributed, and sold a food Product that was actually/potentially adulterated, not fit for human consumption, and that was not reasonably safe as designed, manufactured, or sold.

7.3     Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice were negligent in importing, manufacturing, distributing, and selling a food Product that was actually/potentially adulterated with HAV, not fit for human consumption, and not reasonably safe because it was actually/potentially contaminated with HAV and because adequate warnings or instructions were not provided, including but not limited to the warning that its Product may contain HAV, and thus should not be given to, or eaten by humans.

7.4     The Defendants had a duty to properly supervise, train, and monitor their employees, or the employees of their agents or subcontractors, engaged in the preparation of its food Product, to ensure compliance with the Defendants' operating standards and to ensure compliance with all applicable health regulations. The Defendants failed to properly supervise, train, and monitor these employees, or the employees of their agents or subcontractors engaged in the import, manufacture, preparation and delivery of the Product, and thus breached that duty.

7.5     The Defendants owed a duty to the Plaintiffs and the class to comply with all statutory and regulatory provisions that pertained or applied to the import, manufacture, distribution, storage, labeling, and sale of their food Product, including all applicable local, state, and federal health and safety regulations.   The Defendants, by their import, manufacture, distribution, storage, labeling, and sale of adulterated, unsafe, and unhealthy food Product, failed to conform to this duty.

7.6     The Defendants owed the Plaintiffs and the class the duty to exercise reasonable care in the preparation and sale of their food Product, as it was reasonably foreseeable that the

SECOND AMENDED CLASS ACTION COMPLAINT

Defendants' import, manufacture, distribution and sale of food Product actually/potentially contaminated with HAV would cause injury and harm to all persons potentially exposed to HAV as a result.  The Defendants have breached that duty, and thereby caused injury to the Plaintiffs and the class.

7.7     The Defendants were negligent in importing, manufacturing, distributing and selling a food Product actually/potentially contaminated with HAV.  The Defendants' negligent acts and omissions included, but were not limited to:

(a)     Failure to prevent the actual/potential contamination of their food Product by HAV.

(b)     Failure to properly supervise, train, and monitor their employees, or the employees of their agents or subcontractors, on how to ensure the import, manufacture, distribution and sale of food Product free of adulteration by potentially lethal pathogens.

7.8     Defendants owed the Plaintiffs a duty to comply with all statutory and regulatory provisions that pertained or applied to the import, manufacture, distribution, storage, labeling and sale of their food Product, including the applicable provisions of the federal Food, Drug and Cosmetic Act, and the Idaho adulterated food statutes, including but not limited to, Idaho Code § 37-122.

7.9     The food Product that the Defendants imported, manufactured, distributed and sold, and that the consumers purchased and consumed, was "adulterated" within the meaning of the federal Food, Drug and Cosmetic Act, and the Idaho adulterated food statutes, including but not limited to, Idaho Code § 37-122, because (inter alia): it contained a deleterious substance that rendered it injurious to health; it consisted in whole or in part of a diseased, contaminated, filthy, putrid or decomposed substance, or was otherwise unfit for food; and/or it had been produced,

SECOND AMENDED CLASS ACTION COMPLAINT

prepared, packed or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered diseased, unwholesome or injurious to health.

7.10    Defendants violated federal, state and local food safety regulations by their import, manufacture, distribution and sale of adulterated food Product.

7.11    The federal, state and local food safety regulations applicable here, and as set forth above, establish a positive and definite standard of care in the import, manufacture, distribution and sale of food, and the violation of these regulations constitutes negligence *per se*.

7.12    The Plaintiffs and class members were in the class of persons intended to be protected by these statutes and regulations, and were injured as the direct and proximate result of the Defendants' violation of applicable federal, state and local food safety regulations.

7.13    The Defendants breached the aforementioned duties as alleged herein, which breach constituted the proximate cause of the Plaintiffs' and class members' injuries.

VIII.    **BREACH OF WARRANTIES (Townsend Farms only)**

8.1    By this reference, the Plaintiffs incorporate the preceding paragraphs of this complaint as if each and every one of these paragraphs was set forth here in its entirety.

8.2    Defendant Townsend Farms imported, manufactured, distributed and sold the Product to Costco, and consumers (including the Plaintiffs) purchased the Product from a Costco store.

8.3    By selling the food Product to the consumers, the Defendant impliedly warranted that the food Product sold was fit for the ordinary purpose for which food is used.

8.4    By selling food to the consumers, the Defendant expressly warranted that such food was safe to eat, that it was not actually/potentially adulterated with a deadly pathogen, and that the food had been safely prepared.

SECOND AMENDED CLASS ACTION COMPLAINT

8.5     At the time of this sale, being actually/potentially contaminated with HAV, the Product was not fit for the ordinary purpose for which food is used, and the Defendant breached its express and implied warranties with regard to the food Product it imported, manufactured, distributed and sold to consumers.

8.6     The Plaintiffs and the class members suffered personal injury as a direct result of the Defendants' breach of express and implied warranties, as set forth above.

## IX.    DAMAGES

9.1     The Plaintiffs, and all those similarly situated, *i.e.* the class of persons identified herein, have suffered general and special, incidental and consequential damages as the direct and proximate result of the acts and omissions of the Defendants, which damages shall be fully proven at the time of trial. These damages include, but are not limited to: damages for wage loss; medical and medical-related expenses; (the cost of vaccinations against HAV; the cost of a prophylactic dose of IG; the cost of serology and other diagnostic testing procedures to determine whether exposure to the Recalled Product resulted in infection by HAV); travel and travel-related expenses; emotional distress; fear of harm and humiliation; physical pain; physical injury; and all other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

(1)     That the Court certify this class action under Rule 23(b)(3), Fed.R.Civ.P. or any other appropriate provision of Federal Rule 23, and appoint counsel herein as class counsel;

SECOND AMENDED CLASS ACTION COMPLAINT

(2)     That the Court award Plaintiffs, and all those similarly situated—i.e. the potential class—judgment against Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice, in such sums as shall be determined to fully and fairly compensate them for all general, special, incidental and consequential damages incurred, or to be incurred, as the direct and proximate result of the acts and omissions of Defendants, in an amount to be proven at trial;

(3)     That the Court award Plaintiffs, and all those similarly situated—i.e. the potential class—their respective costs and disbursements, and award class counsel reasonable attorneys' fees;

(4)     That the Court award Plaintiffs, and all those similarly situated—i.e. the potential class—the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(5)     That the Court award Plaintiffs, and all those similarly situated—i.e. the potential class—such other and further relief as it deems necessary and proper in the circumstances.

DATED this 25th day of October, 2013.


RUSSELL LAW OFFICES

By:     */s/ Robie G. Russell*
          Robie G. Russell – Of the Firm

          Attorneys for Plaintiffs


SECOND AMENDED CLASS ACTION COMPLAINT